(77 South. 645)

No. 20901.

RICHARD v. BALDWIN LUMBER CO., Ltd.

(Jan. 11, 1915. On the Merits, Jan. 3, 1918. Rehearing Denied Feb. 7, 1918.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ⬅⬤➡810 — HEARING—PREFERRED CAUSES.

Act No. 17 of 1876 provides that certain appeals shall be placed upon the summary docket including appeals from judgments against sureties upon judicial bonds and injunction cases. *Held,* that this statute is in derogation of common right, and should be strictly construed, and therefore does not apply to appeals from judgments in injunction cases, but only to appeals from judgments against sureties on injunction bonds.

2. APPEAL AND ERROR ⬅⬤➡810 — HEARING — PREFERRED CAUSES—"INJUNCTION CASE."

If act No. 18 of 1876, relative to the appeals to be placed upon the summary docket, applies to appeals in injunction cases, an appeal by plaintiff in a suit to enjoin the operation of a railroad in which no preliminary injunction was asked and no injunction was granted was not an "injunction case," as the statute must refer to those cases where property has been tied up by an injunction; there being no reason for a preference in other cases.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injunction.]

On the Merits.

3. WATERS AND WATER COURSES ⬅⬤➡119(5)—OBSTRUCTION OF DRAINAGE—LIABILITY.

Plaintiff who sold timber to defendant and also granted defendant a servitude of way across his land on the Gulf coast for a railroad for removing the timber was not entitled to damages on the theory that the railroad prevented the recession of the water from his land after it had been flooded by a tidal wave and a heavy rain, where, though it appeared that the railroad did obstruct certain comparatively insignificant coulees, it also appeared that it was the high tides in the Gulf, and not the railroad, that prevented the water from receding.

4. RAILROADS ⬅⬤➡82(6) — GRANT OF RIGHT OF WAY — RESCISSION — "DISSOLVING CONDITIONS."

Under Civ. Code, art. 2045, providing that the "dissolving condition" is that which when accomplished operates the revocation of the obligation placing matters in the same state as though the obligation had not existed, and that it does not suspend the execution of the obligation, but only obliges the creditor to restore what he has received in case the event provided for in the condition takes place, plaintiff's remedy if the railroad in fact did seriously obstruct the drainage was in damages and by mandatory injunction and not by rescission, as the status quo could not be restored.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Dissolving Condition.]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; H. D. Smith, Judge ad hoc.

Action by Arthur Richard against the Baldwin Lumber Company, Limited. From a judgment for plaintiff for insufficient relief, defendant appeals, and plaintiff also appeals. Judgment affirmed in part, and set aside in part.

Foster, Milling, Saal & Milling, of Franklin, for plaintiff. Borah, Himel, Bloch & Borah, of Franklin, for defendant.

On Motion to Put Case on Summary Docket.

PROVOSTY, J. This suit is to annul a contract by which plaintiff granted a servitude of way over his land for a skidder railroad. Plaintiff asks that the contract be annulled, and that the defendant be enjoined from operating the skidder railroad. No preliminary injunction was asked, but the prayer is simply that judgment be rendered enjoining the defendant. This prayer was denied, and no injunction has been granted.

Act 17, p. 36, of 1876, provides that the following appeals shall be placed upon the summary docket: Those "from judgments against sureties upon judicial bonds and injunction cases."

Plaintiff asks that the present case be put upon the summary docket as being an injunction case.

[1, 2] Said provision apparently has reference only to judgments against sureties on injunction bonds. It does not say from judgments in injunction cases. And it being in derogation of common right (for all cases should be treated alike and preference shown

to none), it has to be strictly construed. But if said provision can be said to refer to injunction cases, it must be held to mean those cases where property has been tied up by an injunction. Except where a writ of injunction has actually issued we can think of no reason why preference should be given to an injunction case. If in this case judgment had gone against defendant, and the party asking that the case be put on the preference docket were the defendant and not the plaintiff, there might be some show of reason for calling the case an injunction case within the spirit of the said provision when construed as having reference to injunction cases; but judgment has gone against plaintiff and the injunction has been refused, so that there is in fact no injunction in the case.

The order for the case to be placed on the summary docket must therefore be rescinded, and it is so ordered.

## On the Merits.

Plaintiff sold to the defendant company the cypress trees on the back part of his plantation, and "as a part of the consideration of the sale" sold and conveyed to defendant "a servitude of way across said land for the building and operating of railroads and skidder roads for pulling and removing timber from other lands owned by" defendant; the period of the servitude to be 20 years. The contract provided that "such openings shall be left and the road shall be so constructed as not to interfere with the drainage of the lands of the" plaintiff.

The plantation in question is on the Gulf coast. At its highest part it is but little above Gulf level. The railroad was constructed in November, 1910. During a storm in June, 1912, a tidal wave and a heavy rain flooded the plantation, and plaintiff's crops were injured.

Plaintiff claims that the water would have receded, and been drained off, soon enough for no injury to have occurred, if the defendant's railroad had not impeded its flow; and he claims damages, and asks that the contract be rescinded, as having been violated by the manner in which the railroad was constructed, and asks further that the roadbed be ordered to be removed. Defendant denies that the roadbed impeded materially the flow of the water; denies that the loss was near as great as pretended; avers that whatever loss there was would have occurred just the same if the roadbed had not been there, the true cause of the slow recession of the water having been the high tides in the Gulf; that the contract was not violated; and that, at all events, rescission cannot be ordered, because things could not be put back in the situation in which they were when the contract was entered into.

The jury awarded $1,200 damages, rejected the demand for rescission, and directed that the culverts of the roadbed have free openings.

Defendant has appealed from the award of damages, and plaintiff from the rejection of the demand in rescission.

[3] Plaintiff's land fronts on the public road, north, and extends back, south, towards the Gulf, some four miles. Two miles further south is the arm of the Gulf into which the drainage of that part of the country empties. The cultivated part of the plantation extends about one mile back from the front. The back part of this cultivated land is about one foot above Gulf level—practically not drainable by gravity. It is drained by pumping, and is leveed. About a mile and three quarters back of this back levee is where the defendant's railroad crosses plaintiff's land. It crosses at right angles. Plaintiff's land is a narrow strip, at no point more than a quarter of a mile wide. Between plaintiff's back levee and the roadbed the surface of the land is about at Gulf level; further towards the

Gulf it rises a little, but nowhere more than about a foot.

A slough, or coulee, formerly known as the Rodriguez coulee, but which has been dredged and is now known as the Parish canal, runs along the east boundary of plaintiff's land, and empties a short distance back of plaintiff's back levee into Bayou Choupique, which has been dredged, and is now a 40-foot wide canal, it being one of the main canals of the Cypremort drainage district. This Bayou Choupique enters the back part of plaintiff's land about a quarter of a mile before reaching the railroad, and continues through plaintiff's land on its way south to the Gulf. About a mile and a quarter west of this Bayou Choupique or Cypremort drainage district canal is another 40-foot canal of the same drainage district. Defendant's contention is that the plaintiff's drainage is through these canals, and that these were not obstructed. Plaintiff on the other hand contends that the drainage is through these canals only in part, that it is also directly south through the swamp, following several small sloughs or coulees, which eventually empty into the same Bayou Huger into which Bayou Choupique empties, and that these small coulees were all dammed by defendant's railroad except one, and that the culvert in this one was badly constructed and insufficient.

The evidence shows that drainage would flow south through these small coulees if they were not obstructed by defendant's railroad; but it also shows that these coulees except the culverted one are barely noticeable to the eye, and are insignificant for drainage in comparison with the two large canals. The evidence also supports the contention that the culvert in the one coulee sought to be left open was insufficient. But at the same time it leaves no doubt, we think, that what held back the water was the high tides, and not defendant's railroad; and furthermore,

it leaves doubtful whether, in view of the saltiness of the water, the injury to the crops would not have occurred even if the flood had not been held back at all.

The ground level along the line of the railroad where it crosses plaintiff's land is about 9 inches above Gulf level; the top of the rails varies from 1½ feet to 1 foot 11 inches above ground level. The top of the rails, therefore, where highest, is not more than 2 feet 8 inches above Gulf level. The top of plaintiff's back levee at its lowest point is 2 feet 4 inches above Gulf level. Now the civil engineer in the employ of the United States government, stationed near the outlet of this drainage into the Gulf, testified that, according to the gauge kept by him for report to the government, the tide for several days after this storm remained at 3½ feet above normal Gulf level. And the evidence otherwise shows that the tide remained high owing to prevalent south winds. The evidence also shows that on several plantations of the neighborhood, whose drainage facilities were the same as plaintiff's, the damage to crops was as great, although defendant's railroad did not pass between them and the Gulf, nor in any other way affect them.

[4] We can find no basis for the judgment in damages against defendant. As for the demand in rescission it would be without foundation even if the drainage were seriously obstructed, for the remedy in such case would be in damages and by mandatory injunction, and not for rescission, since rescission is not possible when the status quo at the time of the contract cannot be restored (C. C. art. 2045), as in the present case. Plaintiff would have to restore the price, and defendant the trees. Moreover, it is more than doubtful whether the clause in the contract for noninterference with drainage could be made to apply to a situation created by a tidal wave such as this.

142 LA.—27

·The judgment appealed from is set aside in so far as it condemns the defendant company in damages, and is otherwise affirmed; the plaintiff to pay the costs of this appeal.